UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| DAMIEN JERMAINE GIBSON, | Case No. 2:13-cv-01379-RFB-PAL |
|---|---|
| Plaintiff, | **ORDER** |
| v. | (1st Mot. Compel – Dkt. #35) |
| SDCC, et al., | (2nd Mot. Compel – Dkt. #36) |
| | (3rd Mot. Compel – Dkt. #37) |
| Defendants. | (Mot. Extend Time – Dkt. #46) |
| | (Mot. Strike Supplements – Dkt. #54) |

This matter is before the Court on Plaintiff Damien Jermaine Gibson's Motions to Compel Discovery (Dkt. #35, #36, #37) (the "Discovery Motions") and Motion to Extend Time (Dkt. #46), along with Defendant Aaron Parker's Motion to Strike Supplements (Dkt. #54). This proceeding is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 and 1-9 of the Local Rules of Practice.

Plaintiff is a prisoner in the custody of the Nevada Department of Corrections ("NDOC") at the Southern Desert Correction Center ("SDCC") and is he proceeding in this action *pro se* and *in forma pauperis*. This case arises from Mr. Gibson's allegations, pursuant to 28 U.S.C. § 1983, that numerous NDOC defendants violated his civil rights. On August 5, 2013, Mr. Gibson commenced this action by filing a complaint. Mr. Gibson alleges that on October 15, 2012, he asked a correctional officer, Defendant Aaron Parker, for a "kite" after an exchange of words with Parker. *See* Compl. (Dkt. #6) at 4–5. According to the Complaint, when Parker brought Gibson the form, Parker loudly stated "here's your snitch kite" in front of other inmates. *Id*. Gibson alleges that Parker's conduct exposed him to a risk of retaliatory attack by other inmates. *Id*.

Upon screening the Complaint, the Court determined that it stated two colorable claims against Parker: (Count I) deliberate indifference to Gibson's safety in violation of the Eighth Amendment, and (Count II) retaliation for Gibson's grievance activity in violation of the First

1

Amendment. *See* Apr. 18, 2014 Screening Order (Dkt. #5). The Court dismissed the following claims:

> (a) Count III in its entirety; (b) all claims under the Equal Protection Clause; (c) all claims for gross negligence, carelessness, recklessness, and/or willfulness separate and apart from the intentional conduct and/or deliberate indifference that must be established on the First Amendment and/or Eighth Amendment claims; (d) all claims for compensatory damages for pain and suffering, mental distress, or emotional anguish; (e) all claims, both in their official and individual capacity, against defendants SDCC, Brian E. Williams, Sr., S.L. Foster, J. Gentry and C. Burson; and (f) the claims against defendant Parker in his official capacity only.

*Id*. at 5:14–22. Thus, Parker is the only defendant and the claims against him allege liability in his individual capacity.

On April 10, 2015, the Court entered a Scheduling Order (Dkt. #29) directing that discovery in this action "shall be completed on or before ninety (90) days from the date of this Order, which is July 8, 2015." *Id*. ¶ 5(a). The Scheduling Order also provided a deadline to file discovery motions: July 23, 2015. *Id*. ¶ 7.

On July 23rd, Gibson filed the Discovery Motions to compel production of documents and answers to his interrogatories. *See* Mots. to Compel (Dkt. #35, #36, #37). Parker filed three Oppositions (Dkt. #41, #42, #43) in response on August 10th. According to the Court's docket, Gibson's reply briefs were due on August 20th. Eight days past this deadline, on August 28th, Gibson filed a Motion for Extension of Time (Dkt. #46) asking the Court for an additional 45 days to submit reply briefs. On October 19th, Gibson filed three Notices of Addendum (Dkt. #51, #52, #53) to supplement his Discovery Motions (the "Supplements"). This prompted Parker to file a Motion to Strike (Dkt. #54) Gibson's Supplements. Given their potential impact on the Court's analysis of the Discovery Motions, the Court will first address the Motion for Extension of Time (Dkt. #46) and the Motion to Strike (Dkt. #54).

**I.    GIBSON'S MOTION FOR EXTENSION OF TIME (DKT. #46)**

In this Motion, Gibson asked the Court for an additional 45 days to submit reply briefs because he was in administrative segregation. Gibson represents that he has not had access to the law library to properly research and prepare his case because of his housing situation. Counsel for Parker opposed the request for extension of time arguing that, although restricted access to the

2

1 prison law library can sometimes qualify as good cause for an extension, the Court should deny
2 any extension because of Gibson's failure to meet and confer prior to filing the Discovery Motions.
3 *See* Def.'s Opp'n (Dkt. #47). Parker does not dispute that Gibson's housing situation has affected
4 his ability to conduct his legal work. Parker does not argue that an extension will cause him
5 prejudice. The Court therefore finds that Gibson has shown sufficient cause to grant the extension
6 of time. The Motion is granted.

**II.   PARKER'S MOTION TO STRIKE SUPPLEMENTS (DKT. #54)**

On October 19th, Gibson filed three Supplements (Dkt. #51, #52, #53) to his Discovery Motions. This prompted Parker to file a Motion to Strike (Dkt. #54) the Supplements. Parker asserts the Supplements violate LR 7-2, which only permits the filing of a motion, a response, and a reply. Because the Supplements are not one of these three types of filings, Parker contends they are fugitive documents that should be stricken from the Court's docket. Parker further argues that the Supplements are "not simply replies, as they present new information that postdates the motions and seek to cure [Gibson's] failure to comply with the meet and confer requirement prior to filing the motions." *Id.* at 2:17–19. Alternatively, if the Court denies the Motion to Strike, Parker requests leave to file a supplemental opposition to address the merits of the Discovery Motions.

It is well established that *pro se* litigants must follow the same rules of procedure that govern other litigants. *See, e.g.*, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (noting that "*pro se* litigants are bound by the rules of procedure"). However, federal courts also have an obligation to liberally construe *pro se* pleadings and filings. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 n.7 (9th Cir. 2010). In addition, the Court notes that public policy strongly favors deciding disputes on the merits. *See, e.g.*, *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1248 (9th Cir. 2006) (citing *Forman v. Davis*, 371 U.S. 178, 181 (1962)) (stating it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided" because of "mere technicalities.")).

/ / /

Here, the Court finds that the Supplements are sufficiently related to the arguments set forth in the Discovery Motions to construe them as reply briefs. The Court will not strike Gibson's Supplements simply because Gibson did not title them correctly. Striking Gibson's Supplements would not comport with the public policy favoring decisions on the merits. Additionally, the Court declines to authorize another round of briefing before resolving the Discovery Motions. It would not promote judicial economy. The issues are sufficiently briefed and ripe for review, therefore, the Motion is denied.

### III.  GIBSON'S MOTIONS TO COMPEL (DKT. #35, #36, #37)

In his first Motion to Compel (Dkt. #35), Gibson argues that Defendant Parker has not produced documents in response to his discovery requests asking for documents related to any disciplinary actions against Parker, incidents involving Parker and other inmates, and Parker's work history. In the second Motion to Compel (Dkt. #36), Gibson contends that Parker did not fully answer certain interrogatories. Specifically, Parker objected to Interrogatories Nos. 20, 21, and 22 asking: (i) the reason Parker ended his employment at SDCC, (ii) whether his employment was terminated by SDCC, and (iii) how many "write ups" Parker received while being employed at SDCC. In his third Motion to Compel (Dkt. #37), Gibson asserts that he received incomplete and responses to his requests for documents related to Parker's work history while employed by SDCC, any disciplinary actions against Parker while he was employed by SDCC, and Parker's "full work history" prior to employment with SDCC.

The Discovery Motions contend that Parker refused to produce any documents because the requests were overbroad and not relevant to the subject matter of the lawsuit. Gibson disagrees with Parker's objections but merely argues that his requests are not overbroad and he believes the documents requested contain information relevant to the subject matter of the lawsuit. The Discovery Motions did not contain a certificate confirming Gibson's good faith efforts to resolve this dispute without judicial intervention.

Parker filed Oppositions (Dkt. #41, #42, #43) arguing that the Court should deny the Discovery Motions based on Gibson's failure to meet and confer as required under the Federal Rules of Civil Procedure and the Local Rules of Practice. In addition, Parker asserts that Gibson

failed to provide the Court with the full text of the discovery originally sought and the response to the request in dispute. The Oppositions do not address the underlying objections prompting the Discovery Motions.

Gibson's Supplements (Dkt. #51, #52, #53) attempt to remedy his deficiencies in the Discovery Motions. First, he attaches copies of Parker's responses to his discovery requests, which include his initial requests and the substance of Parker's objections. In sum, Parker's responses to Gibson's requests for production contain boilerplate objections asserting that: (i) the requests are overbroad as they encompasses time periods and activities that are not relevant; (ii) employee personnel files, including documents related to employee discipline, are protected by the government information privilege; (iii) the requests fail to identify with reasonable particularity the documents to be produced. Parker also disclosed a privilege log identifying numerous responsive documents purportedly subject to the "government information privilege" because they contain "sensitive personnel information related to a government employee." *See* Pl.'s Supplements (Dkt. #51) at 8–12, (Dkt. #53) at 9–13. Parker's responses to the disputed Interrogatories Nos. 20, 21, and 22 state that Gibson's questions "are not relevant to allegations of retaliation, and the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence." *See also* Def.'s Opp'n Ex. 1 (Dkt. #43-1) at 5–6; Pl.'s Supplement (Dkt. #52) at 9–10. Second, the Supplements inform the Court that Gibson sent a letter to Parker's counsel on August 24, 2015, explaining his position as to why the requested documents and answers to his interrogatories were relevant and discoverable. Pl.'s Supplement (Dkt. #53) at 16–21. The parties later held a telephonic meet and confer on October 2nd, but they could not agree on a resolution to this dispute. *Id*. at 2–3. Gibson has sufficiently addressed the technical deficiencies in his Discovery Motions; therefore, the Court will address the substance of the motions.

### A.     Legal Standard

Rule 26 of the Federal Rules of Civil Procedure permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discovery is not limited to admissible information. *Id.* However, all discovery is subject to the limitations imposed by Rule 26(b)(2)(C). In deciding whether to restrict discovery under Rule 26,

federal courts should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and accounting for society's interest in promoting the truth-seeking function in the case before the court. *See, e.g.*, *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); *Rowlin v. Alabama Dep't. of Pub. Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001) (noting that "courts have the duty to pare down overbroad discovery requests") (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033–34 (9th Cir. 1990)).

Recently, Supreme Court Chief Justice John Roberts issued his Year-End Report on the Federal Judiciary in which he addressed at length the 2015 amendments to the Federal Rules of Civil Procedure.[1] The 2015 amendments to Rule 26(b)(1) emphasize the need to impose "reasonable limits on discovery through increased reliance on the *common-sense concept of proportionality*." *Id*. (emphasis added). The fundamental principle of amended Rule 26(b)(1) is that the parties "must size and shape their discovery requests to the requisites of a case." *Id*. at 7. The pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery. This requires active involvement of federal judges to make decisions regarding the scope of discovery. Chief Justice Roberts asked federal judges "to take on a stewardship role, managing their cases from the onset rather than allowing parties alone to dictate the scope of discovery" and to actively engage in case management to "identify the critical issues, determine the appropriate breadth of discovery, and curtail dilatory tactics, gamesmanship, and procedural posturing." *Id*. at 10–11.

**B.    Analysis**

    **1.    <u>Parker's Personnel Files</u>**

Gibson's requests for production seek documents related to Parker's employment with SDCC, any disciplinary actions against Parker during his employment, and incidents involving Parker and other inmates. Gibson's meet and confer letter to Parker's counsel asserts, among other things, that he needs the documents to show that Parker's employment with SDCC ended because Parker did not follow NDOC's conduct requirements. *See* Supplement (Dkt. #53) at 16–21.

---

[1] Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary (Dec. 31, 2015), *available at* http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.

1 Gibson also seeks to establish whether Parker had received complaints from other inmates to show
2 that Parker engaged in a pattern of retaliatory and unprofessional conduct. *Id*. Parker's privilege
3 log identifies numerous responsive documents being withheld based on the "government
4 information privilege" because they contain "sensitive personnel information related to a
5 government employee." *See* Pl.'s Supplements (Dkt. #51) at 8–12, (Dkt. #53) at 9–13.

6 The first limitation on permissible discovery is that it be relevant. *See, e.g.*, *Dowell v. W.T.*
7 *Griffin*, 275 F.R .D. 613, 617 (S.D. Cal. 2011) (stating that relevance must be addressed before a
8 privilege analysis). Traditionally, courts have liberally construed the relevancy requirement stated
9 in Rule 26(b)(1). *E.E.O.C. v. Caesars Entertainment*, *Inc.*, 237 F.R.D. 428, 431–32 (D. Nev.
10 2006). Relevant information for purposes of discovery is information "reasonably calculated to
11 lead to the discovery of admissible evidence." *Surfvivor Media Inc. v. Survivor Prods.,* 406 F.3d
12 625, 635 (9th Cir. 2005) (citation omitted).

13 Insofar as Gibson asks Parker produce *any and all* documents related to Parker's
14 employment with SDCC, any disciplinary actions against Parker during his employment, and
15 incidents involving Parker and other inmates, the Court finds the request is overbroad. For
16 example, Parker's personnel files certainly contain private information such as his emergency
17 contacts, insurance information, dependents, and the like. Any disciplinary records may contain
18 write ups for being tardy, an untidy uniform or other matters completely unrelated to interactions
19 with an inmate amounting to retaliation or exposing the inmate to danger. Only disciplinary
20 actions for specified conduct are potentially relevant and therefore discoverable.

21 The second limitation on discovery is that the matter sought be nonprivileged. In a federal
22 civil rights case brought pursuant to 42 U.S.C. § 1983, privilege is determined by federal law. Fed.
23 R. Evid. 501; *Breed v. U.S. Dist. Ct. for N. Dist. Cal.*, 542 F.2d 1114, 1115 (9th Cir. 1976) (action
24 brought under 42 U.S.C. § 1983). "Federal common law recognizes a qualified privilege for
25 official information." *Dowell*, 275 F.R.D. at 616 (citing *Sanchez*, 936 F.2d at 1033). Government
26 personnel files are considered official information for the purposes of the privilege. *Id.* Thus,
27 personnel files may be privileged under certain circumstances. *Id.* However, the Ninth Circuit
28 has held that personnel files may be discoverable, despite claims of privilege. *See, e.g.*, *Kerr v.*

*U.S. Dist. Ct., N. Dist. of Cal.*, 511 F.2d 192, 196–97 (9th Cir. 1975), *affirmed by* 426 U.S. 394 (1976); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995) (stating even if requested documents in "personnel files are protected by defendants' privacy right, that right may, nevertheless be invaded for litigation purposes"). When a party asserts the official information privilege, courts "must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Id.*[2]

"Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests." *See, e.g.*, *Dowell*, 275 F.R.D. at 617. For disclosure of police or other law enforcement files, federal courts have recognized that "privacy rights are not inconsequential." *Id.* (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987)). However, these privacy rights must be considered in light of the "substantial weight afforded plaintiffs" in civil rights cases against law enforcement officials. *Id.* District courts in the Ninth Circuit have repeatedly held that the privacy interests law enforcement officers have in their personnel files do not outweigh plaintiff's interests in civil rights cases. *See, e.g.*, *Soto v. City of Concord*, 162 F.R.D. 603, 617 (N.D. Cal. 1995) (collecting cases and concluding that the privacy interests of an officer-defendant does not outweigh a civil rights plaintiffs' need to discover relevant personnel files).

Because the Court finds that certain documents in Parker's personnel file may be relevant and important to Gibson's claims, public policy considerations outweigh Parker's privacy concerns. To balance the competing interests, the Court orders Parker to submit the documents identified in Parker's privilege log to the Court for an *in camera* review. If there are documents in Parker's personnel files relevant to the allegations in Gibson's civil rights claims, the Court will

---

[2] Parker asserted a "government information privilege," which is another term to describe the official information privilege. The Court notes that the Gibson's Supplements do not challenge Parker's privilege log or the assertion that the government information privilege applies to the documents identified therein. However, the Ninth Circuit has held that boilerplate objections or blanket refusals to produce documents are insufficient to assert a privilege. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct., Dist. of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005); Fed. R. Civ. P. 34(b)(2)(C). As the proponent of the privilege, Parker bears the burden of demonstrating that the privilege applies to the documents in question. *United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002) ("The burden is on the party asserting the privilege to establish all the elements of the privilege."). Thus, the Court will evaluate Parker's objections and claim of privilege.

8

order production in a controlled environment that protects the information from disclosure for any purpose unrelated to this lawsuit.

### 2. Parker's Work History Prior to SDCC

Gibson's requests for production seek documents related to Parker's "full work history" prior to employment with SDCC. Gibson asserts that this request seeks information regarding whether Parker was terminated "from his prior employers for poor job performance or for unprofessional work conduct." *See* Pl.'s Supplement (Dkt. #53) at 18. Parker's employment prior to SDCC is not relevant or material to the issues identified in Gibson's allegations because past incidents of poor job performance or unprofessional work conduct have no bearing on this case. "This sort of 'past conduct' evidence is not admissible in federal courts, with very narrow exceptions." *Segura v. City of Reno*, 116 F.R.D. 42, 44 (D. Nev. 1987) (citing Fed. R. Evid. 404(b)). Thus, the Discovery Motions are denied as to Parker's "full work history" prior to employment with SDCC.

### 3. Interrogatories Nos. 20, 21, 22

Parker objected to Interrogatories Nos. 20, 21, and 22 as follows:

**INTERROGATORY NO. 20:**
What was the reason you separated employment from [SDCC] as a correctional officer?

**ANSWER TO INTERROGATORY NO. 20:**
Objection, the reason for Defendant Parker's separation from service is not relevant to Plaintiff's allegations of retaliation, and the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 21:**
Did [SDCC] terminate you, from being employed as a correctional officer at SDCC?

**ANSWER TO INTERROGATORY NO. 21:**
Objection, whether Defendant Parker was terminated from his NDOC employment is not relevant to Plaintiffs allegations of retaliation, and the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 22:**
How many write ups did you receive[] while being employed at SDCC?

**ANSWERTO INTERROGATORY NO.**
Objection, the number of write-ups Defendant Parker received during his employment at SDCC is not relevant to Plaintiff's allegations of retaliation, and the

1  interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

2  *See* Pl.'s Supplement (Dkt. #52) at 9–10.  Gibson asserts that these interrogatories seek information about whether SDCC deemed Parker's conduct "unprofessional" or disciplined and/or terminated Parker's employment because of other inmate complaints.  *See* Supplement (Dkt. #53) at 16–17.

The Court finds that Parker's objections are boilerplate and inadequate.  *Walker v. Lakewood Condo Owner's Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (finding that the party resisting discovery has the burden to show that the discovery should not be allowed).  Gibson's request to compel an answer to Interrogatory 20 is denied.  However, Gibson is entitled to reasonable discovery to determine whether SDCC disciplined and/or terminated Parker's employment based upon the alleged incident with Gibson or any other incident(s) in which an inmate claimed that Parker retaliated against the inmate or was deliberately indifferent to the inmate's safety.  The court will modify Interrogatory 21 and 22 as set forth below and compel Parker to answer both interrogatories as modified.

For the reasons explained,

**IT IS ORDERED:**

1. Plaintiff Damien Jermaine Gibson's Motion to Extend Time (Dkt. #46) is GRANTED.
2. Defendant Aaron Parker's Motion to Strike Supplements (Dkt. #54) is DENIED.
3. Plaintiff Damien Jermaine Gibson's Motions to Compel Discovery (Dkt. #35, #36, #37) are **GRANTED in part and DENIED in part** as indicated in this order.
4. Defendant Parker shall have until **March 16, 2016**, to submit the documents identified in his privilege log to the Court for *in camera* review.  The Court will issue a separate order identifying which documents, if any, are appropriate for production.
5. Defendant Parker shall have until **March 16, 2016**, to serve Plaintiff with supplemental answers to the following interrogatories:
    a. Interrogatory No. 21.  Were you terminated from employment with SDCC based in whole or in part on (i) the October 2012 incident involving Gibson

10

                   or (ii) any other incident in which an inmate claimed you retaliated against the inmate or was deliberately indifferent to the inmate's safety?

        b.   Interrogatory No. 22. Were you disciplined by SDCC based in whole or in part on (i) the October 2012 incident involving Gibson or (ii) any other incident in which an inmate claimed that Parker retaliated against the inmate or was deliberately indifferent to the inmate's safety?

Dated this 2nd day of March, 2016.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

11